UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CARLENE A. LINDGREN,

Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

Defendant.

CASE NO. C05-5240KLS

ORDER REVERSING THE COMMISSIONER'S DECISION TO DENY BENEFITS

Plaintiff, Carlene A. Lindgren, has brought this matter for judicial review of the denial of her application for disability insurance benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is fifty-nine years old.[1] Tr. 63. She graduated from high school and completed two years of college. Tr. 118. She has past work experience as a receptionist, office assistant and assembly

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

worker. Tr. 113, 136, 488.

Plaintiff filed an application for disability insurance benefits on September 22, 1999, alleging disability as of March 31, 1993, due to diabetes mellitus, anemia, bilateral carpal tunnel syndrome, hypothyroidism, degenerative disc disease, degenerative joint disease, and a depression-adjustment disorder. Tr. 107, 112, 486. Her application was denied initially and on reconsideration. Tr. 63-65, 70. Plaintiff requested a hearing, which was held on April 25, 2001, before an administrative law judge ("ALJ"). Tr. 29. At the hearing, plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Tr. 29-62. Also at the hearing, plaintiff amended her alleged onset date of disability to September 1, 1998. Tr. 31.

On June 5, 2001, the ALJ issued a decision determining plaintiff to be not disabled, finding specifically that she was capable of performing work existing in significant numbers in the national economy. Tr. 17-18. Plaintiff's request for review of that decision was denied on April 18, 2003. Tr. 4. Plaintiff filed a complaint with this court seeking review of the ALJ's decision, and on December 3, 2003, the court remanded the matter to the Commissioner for further administrative proceedings based on the stipulation of the parties. Tr. 504-06. Pursuant to the court's remand order, the Appeals Council remanded the matter to an ALJ on March 13, 2004. Tr. 499, 501-03.

A new hearing was held before the same ALJ on October 28, 2004. Tr. 647. At that hearing, plaintiff, represented by counsel, appeared but did not testify. Tr. 647-62. Also at the hearing, a different medical expert and a different vocational expert appeared and testified. Id. On March 31, 2004, the ALJ issued a decision, again determining plaintiff to be not disabled, finding specifically in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of diabetes mellitus, bilateral carpal tunnel syndrome, hypothyroidism, degenerative disc disease, degenerative joint disease, and a depression-adjustment disorder;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and

(4) at step four, plaintiff had the residual functional capacity to perform a wide range of sedentary work, with certain postural, manipulative, environmental, and non-exertional limitations, which did not preclude her from being able to perform her past relevant work as an office assistant.

Tr. 497-98. It does not appear from the record that the Appeals Council assumed jurisdiction of the case. 20 C.F.R. § 404.984. The ALJ's decision therefore became the Commissioner's final decision after sixty days. Id.

On March 31, 2005, plaintiff filed a complaint in this court seeking judicial review of the ALJ's decision. (Dkt. #1). Plaintiff argues that decision should be reversed and remanded for an award of benefits, because:

(a) the ALJ erred in finding plaintiff capable of returning to her past relevant work;

(b) the Commissioner did not carry her burden of showing plaintiff was capable of performing other jobs existing in significant numbers in the national economy;

(c) the ALJ erred in assessing plaintiff's credibility; and

(d) the ALJ erred in ignoring the lay witness statement in the record.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, finds that this matter should be remanded for further administrative proceedings.

DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ Erred in Finding Plaintiff Capable of Returning to Her Past Relevant Work

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. § 404.1520. If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related

activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In his decision, the ALJ set forth the following assessment of plaintiff's residual functional capacity:

> I find the claimant retains the Residual Functional Capacity for a "wide to full range" of "Sedentary" exertion, with Postural, Manipulative and Environmental non-exertional limitations. Exertionally, the claimant is capable of being able to "lift and carry" up to "no more than 10-pounds," at any time. She can "stand and walk" up to no more than 2 hours (cumulatively, not consecutively), in an 8 hour workday with normal breaks. She can "sit" up to 6 hours (cumulatively, not consecutively), in an 8 hour workday with normal breaks. Her combined capacities to "sit, stand and walk," reflect that she can cumulatively perform these activities for up to 8-hours, in an 8 hour workday with normal breaks. The claimant's "push/pull" capacity, in her upper and lower extremities are "unlimited," based on the weight amounts that she can "lift and carry," as set forth above.
>
> The claimant's Postural non-exertional limitations allow that she has the capacity to "occasionally" climb stairs and equivalent ramps with handrails. She is also capable of "occasional" bending, balancing, stooping, kneeling, crouching and crawling. She however [sic] "precluded from any" climbing of "ropes, ladders and scaffolding." Her Manipulative non-exertional limitations require that she is "precluded" from performing "prolonged repetitive fine fingering and grasping," with her hands and fingers, bilaterally. She can however perform "occasional" fine fingering and grasping, such as computer keyboarding, writing and small item sorting.
>
> Because of the claimant's medications, obesity and complaints of occasional shortness of breadth upon prolonged exertion; I find the substantial and medical evidence of record also requires her to have Environmental non-exertional limitations "precluding" her from performing any work activities around hazards, such as working at unprotected heights, or around machinery with exposed moving parts.
>
> Lastly, in giving the claimant all benefit of doubt, based primarily on her subjective self-reports of symptoms and limitations, I shall grant her the Vocational non-exertional limitation restricting her to no more than "*Simple, Routine, Repetitive*, 1-2-3 step Type-Work," with the additional restrictions that she only be allowed "occasional" interaction with co-workers and the general public.

Tr. 495-96. The ALJ further stated that he asked the vocational expert at the second hearing to consider an individual with the same residual functional capacity as plaintiff. Tr. 497.

Plaintiff argues, however, that the ALJ did not provide that vocational expert with the same residual functional capacity assessment he set forth in his decision. The undersigned agrees. At that hearing, the ALJ offered the following hypothetical question:

> I want you to consider a -- well, I'm going to change the age -- a 52-year-old individual with 14 years of education who's done the same past relevant work as you just described that Miss Lindgren did who can sit up to six hours in an eight-hour day and can stand two hours and walk one hour in an eight-hour day, will have some trouble performing repetitive fine manipulation . . . So there would be loss of -- some impaired sensation in fine manipulation but could lift up to five to ten pounds on a repetitive basis, can operate foot controls and could occasionally bend, squat and reach above the shoulders, will be limited as to #6 on an MRFC [mental residual functional capacity] form which is ability to maintain attention and concentration for extend periods. . . . Moderate. And is limited moderate as to #7, performing activities within a schedule at all, and #11, may have moderate limitations in completing a normal workday and may have moderate limitations in interacting appropriately with the general public.

Tr. 654-55. Clearly, this hypothetical question does not contain all of the physical and mental limitations that the residual functional capacity assessment set forth in the ALJ's decision does.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (because ALJ included all limitations that he found to exist, and those findings were supported by substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

Because the hypothetical question did not contain all of the limitations the ALJ found plaintiff had, that question did not accurately describe those limitations, and thus was unreliable. Defendant argues that the ALJ's reference to a standard mental residual functional capacity assessment form in the hypothetical question, which indicated plaintiff had moderate limitations in maintaining attention and concentration, performing activities within a schedule, and completing a normal workday, sufficiently covered plaintiff's limitation to simple, routine, repetitive one to three step work. That form, however, also contains separate

boxes to mark in describing a claimant's ability to understand, remember and carry out simple instructions, which would appear to more adequately address the ability to perform simple, routine, repetitive work. Tr. 382. As such, defendant's argument is without merit, and, in any event, as noted above, there were other limitations the ALJ found plaintiff had, but did not include in the hypothetical question.

For example, the ALJ limited plaintiff to only occasional fine fingering and handling. Defendant argues these limitations were sufficiently addressed by the ALJ's inclusion in the hypothetical question statements to the effect that plaintiff would have "some trouble performing repetitive fine manipulation" and "some impaired sensation in fine manipulation." Tr. 654. The ALJ, however, did not define the term "some." It thus is not at all clear that the term "some" means "occasional," which the ALJ defined to mean "occurring from very little up to one-third of the time, or up to 2 hours in an eight hour workday." Tr. 496. As such, the undersigned cannot say that the ALJ adequately addressed plaintiff's fingering and handling limitations in the hypothetical question he posed to the vocational expert.

Plaintiff next argues the ALJ erred in describing the vocational expert's testimony regarding her past relevant work as a receptionist and an in-home care provider. While this may or may not be true, any such error is irrelevant here, as the ALJ did not find plaintiff capable of performing those jobs. See Tr. 497-98. Plaintiff further argues the ALJ did not accurately describe the vocational expert's testimony regarding her past relevant work as an office assistant. The ALJ stated that the vocational expert described that job as being sedentary and at the low end of semi-skilled work, with a special vocational preparation ("SVP")[2] of "2-3." Tr. 497. It is true the vocational expert testified that the job of office assistant had an SVP of "3." Tr. 653. The ALJ's description, however, otherwise generally comported with the vocational expert's testimony (Tr. 653-55), and plaintiff has not shown the harm caused by this one discrepancy. In addition, although the vocational expert did testify it was "not terribly uncommon in the labor market that an office assistant range from sedentary to light" (Tr. 654), she found there were a significant number of such jobs in the national economy that could be performed at the sedentary level. Tr. 497, 655-56.

Plaintiff argues that she is unable to perform her past relevant work as a receptionist. Again, to the

---

[2]SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles ("DOT"), Appendix C. An SVP of 2 denotes "[a]nything beyond short demonstration up to and including 1 month," while an SVP of 3 is "[o]ver 1 month up to and including 3 months." Id.

extent that plaintiff is correct, this issue is irrelevant, as the ALJ did not find her capable of performing that job. See Tr. 497-98. Plaintiff's argument that the ALJ erred in finding her capable of returning to her past relevant work as an office assistant, however, does have merit. First, because, as discussed above, the ALJ did not provide the vocational expert with the full residual functional capacity assessment he set forth in his decision, the vocational expert's testimony that plaintiff could perform the job of office assistant (Tr. 655-56) is not reliable. As such, the ALJ improperly concluded that plaintiff was capable of returning to that job. See Tr. 497-98.

In addition, it appears that plaintiff would be precluded from performing her past relevant work as an office assistant based on the ALJ's assessment of her residual functional capacity. Plaintiff argues this is the case because that job is described as being semi-skilled work, while the ALJ limited her to simple, routine, repetitive one to three step work. Instead, plaintiff asserts, the job of office assistant is analogous to unskilled work. While it is not clear that simple, routine, repetitive one to three step work is entirely analogous to unskilled work, certainly it would seem that a limitation to simple, routine, repetitive one to three step work is less likely to be found within the realm of semi-skilled work.

The Social Security Regulations provide the following definition of unskilled work:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we considered unskilled jobs if the primary work duties are handling, feeding and off bearing (that is, placing or removing material from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.

20 C.F.R. § 404.1568(a). Such work, therefore, requires "little or no judgment to do simple duties that can be learned on the job in a short period of time." Id. It is true that there is no mention in that definition of the terms "routine" or "repetitive." Nor does that definition necessarily exclude the requirement that an individual be capable of following more detailed or complex instructions. Semi-skilled work, however, is defined as follows:

> Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

20 C.F.R. § 404.1568(b). Semi-skilled work, therefore, is much more likely to involve more than merely simple, routine, repetitive one to three step tasks than unskilled work.

Other factors appear to preclude plaintiff from being able to perform the job of office assistant as well. For example, although the ALJ limited plaintiff to only occasional fine fingering and grasping, the DOT defines the job of office assistant as requiring frequent fingering and handling. DOT 209.562-010. Defendant argues the vocational expert explained that "[t]he fine manipulation is not considered repetitive because in routine office work, the variety of tasks is quite unique to the point where nothing is done for extended periods." Tr. 655. While the vocational expert did testify as well that the job of office assistant involves "a combination of . . . gross handling, fingering, feeling, manipulation," she also testified that use of the hands in that position was "frequent," or two-thirds of the day, in "a routine office clerk because of the variety of tasks." Tr. 658. Thus, even though the vocational expert testified that plaintiff was capable of performing the job of office assistant, she did state that it required frequent use of the hands, which is in accordance with the definition of that position contained in the DOT.

Plaintiff further argues that the ALJ's limitation to only occasional interaction with co-workers and the general public precludes her from being able to perform the job of office assistant as well. In addition, plaintiff asserts that although the limitation to occasional interaction with co-workers was included in the hypothetical question, the same limitation as to the general public was not. It is true that the ALJ did not include the latter limitation in the hypothetical question, and to that extent the ALJ erred. Further, while the DOT describes the ability to deal with people as being "[n]ot significant" for the job of office assistant, performance of that job appears to require the ability to talk on an occasional basis. DOT 209.562-010. Thus, there seems to be a requirement that an individual in that position have at least some oral contact with co-workers. What is not clear is whether a limitation to only occasional "interaction" with co-workers creates a greater restriction than that requirement. Although the undersigned therefore cannot say plaintiff is precluded from performing the job of office assistant on this basis, nevertheless, the other limitations discussed above would appear to do so.

II. Plaintiff's Ability to Do Other Work Existing in Significant Numbers in the National Economy

Plaintiff argues that given her residual functional capacity, her age at the time of her alleged onset date of disability, her education, and her past relevant work experience, she is disabled under Rule 201.14 of

the Commissioner's Medical-Vocational Guidelines (the "Grids"). See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.14. If plaintiff cannot perform her past relevant work at step four of the disability evaluation process, at step five, the ALJ must show there are a significant number of jobs in the national economy she is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d)-(e). The ALJ may do this by reference to the Grids. Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

At the time of her alleged onset date of disability, plaintiff was an individual approaching advanced age (age 50 to 54). 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(g). With respect to such individuals, 20 C.F.R. Part 404, Subpart P, Appendix 2, provides as follows:

> Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains. However, recently completed education which provides for direct entry into sedentary work will preclude such a finding. For this age group, even a high school education or more (ordinarily completed in the remote past) would have little impact for effecting a vocational adjustment unless relevant work experience reflects use of such education.

20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(g). Pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.14, an individual who is closely approaching advanced age, is limited to sedentary work, has at least a high school education that "does not provide for direct entry into skilled work," and has previous skills that are not transferable to other work, that individual is deemed disabled.

Plaintiff argues Grid Rule 201.14 applies here, because while she may have had past relevant work experience performed at the semi-skilled level, the ALJ's assessment of her residual functional capacity limited her to simple, routine, repetitive one to three step work, which plaintiff asserts, equates to an ability to perform only unskilled work. Because skills are not transferrable to unskilled work, plaintiff argues, she has no transferrable skills, and thus is disabled. Plaintiff's reasoning, however, is unpersuasive. While the undersigned did find, as discussed above, that it is more likely that simple, routine, repetitive one to three step work would fall within the realm of unskilled work, it is not at all clear that these two are completely analogous. In any event, the undersigned finds it more appropriate for the ALJ to have the opportunity to first determine whether the limitation to simple, routine, repetitive one to three step work would result in a finding of disability under either Rule 201.14 or any other applicable Grid rule.

In addition, the record indicates that plaintiff recently completed two years of college course work.

Tr. 118. Defendant argues that a decision as to whether plaintiff is disabled at step five of the sequential evaluation process is premature, as such education could provide for direct entry into skilled work. It is not clear from the record, however, what skills, if any, plaintiff obtained from her college course work. See Tr. 44. Nevertheless, it certainly is possible that such course work could preclude a finding of disability under the Grids, and, in any event, it is a factor that also more appropriately should be considered by the ALJ in making that determination at this stage rather than the court. Accordingly, for the reasons set forth above, this matter should be remanded for the Commissioner to make a proper step five analysis.

III. The ALJ Properly Assessed Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

Here, the ALJ found plaintiff's testimony regarding her inability to work to be not credible. Tr. 494.

Specifically, he discounted her credibility in part for the following reason:

> Through and beyond the date of her first hearing in April of 2001, she had been the full time care provider for her mother, for approximately two years, since her husband's death, in May of 1999. Her mother suffers from a spinal cord injury, secondary to a motor vehicle accident . . . injury, and her mother is medically assessed as "very frail."

Id. Plaintiff argues this reason is not clear and convincing, because she never testified that she was an in-home care provider for her mother. It is true that plaintiff only testified at the first hearing that her seventy-eight year-old grandmother was living with her. Tr. 36.

Other evidence in the record, however, indicates that plaintiff did provide substantial in-home care for her mother. In late August 1999, for example, plaintiff reported that she took "care of her mother all the time." Tr. 233. In early January 2000, it was noted that plaintiff was "[f]eeling burdened by care of mother." Tr. 468. In early February 2001, it also was noted that she was "caregiver to elderly mother" and that she took "care of her mom." Tr. 395, 398. Thus, it appears that plaintiff had been the primary care giver for her mother from at least late August 1999 through early February 2001, and acted in that role in a fairly substantial manner. As such, it was not improper for the ALJ to find this evidence to be inconsistent with plaintiff's allegation of disability.

The ALJ also discounted plaintiff's credibility because of her ability to engage in activities of daily living, including going shopping, doing the laundry, cooking, and occasionally doing yard work. Tr. 494. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id.

Plaintiff argues this reason for discounting her credibility also is not clear and convincing, because the ALJ failed to mention the limitations she reported she had in performing these activities. It is true that plaintiff reported significant limitations in her ability to do those activities when she applied for disability insurance benefits. See Tr. 130, 132-34, 167. At the hearing, however, she testified that she did most of the housework and cooking and all of the shopping, drove, walked at least a block and was "up and down during the course of" each day, occasionally did yard work, did the laundry, including folding the clothes, and made the beds, albeit with respect to this last task only "with assistance." Tr. 36-37, 40, 44. The ALJ

properly considered plaintiff's testimony to be indicative of an ability to spend a substantial part of her day doing household chores, and thus an ability to work, particularly in light of the fact that she was providing substantial in-home care for her mother at the same time.

Other evidence in the record further belies plaintiff's assertion of only very limited ability to engage in activities of daily living. For example, in late July 1999, she reported that she enjoyed computers and had "good friends" with whom she stayed in touch on the computer. Tr. 245. She also reported having begun a "new romantic internet relationship." Tr. 223, 229, 458, 464. In late January 2000, plaintiff reported that she had signed up for a "craft class." Tr. 464. In late February 2000, she reported that she was taking a painting class, which she was "enjoying very much." Tr. 458. In late March 2000, it was noted that she would continue to engage in "hobbies/crafts and repair of home." Tr. 454. In early February 2001, plaintiff stated she was "physically independent with her daily personal care." Tr. 398.

The ALJ further discounted plaintiff's credibility in part because her allegations of disability were inconsistent with the medical evidence in the record. Tr. 494. A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). For example, the ALJ noted that plaintiff's alleged need to lie down during the day "as a consequence of any impairment" was not documented in the medical evidence in the record. Tr. 494. While it is true, as plaintiff asserts, that the medical expert at the first hearing testified that her adjustment disorder could account for her fatigue (Tr. 49), neither that expert nor any of the other medical sources in the record actually found that she had a medically documented need to lie down during the day.

In addition to the issue of plaintiff's fatigue, the ALJ also noted that her allegations of disabling hand pain were "inconsistent with her previous statements of having achieved good pain relief following carpal tunnel surgeries." Tr. 494. This too was a proper reason for discounting plaintiff's credibility. See Smolen, 80 F.3d at 1284 (ALJ may consider prior inconsistent statements concerning symptoms). The weight of the medical evidence in the record indeed does show that plaintiff obtained significant relief due to the carpal tunnel surgeries she had. See Tr. 219, 221, 227, 237, 391-92. Indeed, in mid-November 1999, she reported that "[e]ssentially all her preoperative pain and paresthesias" had "resolved." Tr. 391. The ALJ thus did not err in discounting plaintiff's credibility in part for this reason as well.

IV. The ALJ Did Not Err in Evaluating the Lay Witness Statement in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

Plaintiff argues the ALJ erred in ignoring the lay witness statement provided by her mother. In that statement, plaintiff's mother stated she had noticed plaintiff "having trouble with bending, stooping and carrying," and knew when plaintiff had "trouble with fatigue," because she needed "to take afternoon naps on several days a week." Tr. 532. The undersigned agrees the ALJ erred in failing to provide any reason for disregarding this statement,[3] but finds such error to be harmless for the following reasons. See Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (applying harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding ALJ committed harmless error). First, because plaintiff's mother did not state how much trouble plaintiff was having with bending, stooping and carrying, the undersigned finds her observations to be adequately addressed by the ALJ's determination that plaintiff was able to perform those tasks only occasionally. Second, as discussed above, the weight of the medical evidence in the record fails to support plaintiff's allegation that she needs to lie down during the day.

V. This Matter Should Be Remanded to the Commissioner for Further Administrative Proceedings

The court may remand a case "either for additional evidence and findings or to award benefits."

---

[3]Defendant cites to the Ninth Circuit's holding in Vincent for the proposition that the ALJ need not provide any reasons for rejecting lay witness testimony that is unsupported by the medical evidence in the record. 739 F.3d at 1395. The Ninth Circuit's decision in Vincent, however, pre-dates its holding in Lewis, in which it determined that the ALJ must expressly disregard such testimony, and provide germane reasons for doing so. Lewis, 236 F.3d at 511. Thus, while the ALJ may disregard lay witness testimony for the reason that it conflicts with the medical evidence in the record, that reason must be expressly provided by the ALJ in his or her decision.

Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Id.; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because, as discussed above, issues remain with respect to whether plaintiff is able to perform other work existing in significant numbers in the national economy, this matter shall be remanded to the Commissioner for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the court finds the ALJ improperly determined plaintiff was not disabled. Accordingly, the ALJ's decision hereby is REVERSED and REMANDED to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

DATED this 5th day of January, 2006.

Karen L. Strombom
United States Magistrate Judge